UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60989-CIV-COHN/ROSENBAUM

CITY OF DANIA BEACH, FLORIDA,
et al.,

               Plaintiffs,

vs.

U.S. ARMY CORPS OF ENGINEERS,

               Defendant,

and

BROWARD COUNTY, FLORIDA,

               Intervenor/Defendant.

_____/

## ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Preliminary Injunction [DE 4] ("Motion"). The Court has carefully considered the Motion, Defendant U.S. Army Corps of Engineers' Response [DE 15] ("Corps Response"), Defendant/Intervenor Broward County's Response [DE 22] ("Broward County Response"), Plaintiffs' Reply to the U.S. Army Corps of Engineers' Response [DE 18] ("Corps Reply"), Plaintiffs' Reply to Broward County's Response [DE 28] ("Broward County Reply"), the argument of counsel at the July 3, 2012 hearing, and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiffs City of Dania Beach, Rae Sandler, and Grant Campbell (collectively "Plaintiffs") filed suit against Defendant U.S. Army Corps of Engineers (the "Corps") on

May 23, 2012.  Complaint [DE 1].  The Complaint challenges a permit the Corps issued which allows Intervenor/Defendant Broward County[1] to fill approximately 8.87 acres of wetlands and secondarily impact 39.17 acres of wetlands in order to expand Runway 9R/27L ("South Runway") at the Fort Lauderdale-Hollywood International Airport (the "Airport").  Id. ¶ 1.  Plaintiffs contend that the Corps issued the permit without considering the impact of increased noise levels on the health of residents in neighborhoods in the City of Dania Beach, thus violating both the National Environmental Policy Act ("NEPA") and the Clean Water Act ("CWA").  Id. ¶ 2. Plaintiffs argue that the Corps authorized the permit for the South Runway despite another practicable alternative, namely a north parallel runway ("North Runway"), which would have resulted in less noise and environmental impacts.  Id. ¶ 3.

Plaintiffs seek a declaration from this Court that the permit issued by the Corps violates NEPA, the CWA, and the Administrative Procedure Act ("APA"), to vacate the Corps' record of decision and the permit, and to enjoin the Corps and Broward County (collectively "Defendants") from any further construction of the South Runway until it complies with NEPA, the CWA, and the APA.  Complaint at 20-21.  On May 24, 2012, Plaintiffs filed the instant Motion which seeks to enjoin further construction of the South Runway while the Court considers Plaintiffs' Complaint on the merits.  Both the Corps and Broward County oppose the Motion.

---

[1]       On June 6, 2012, Broward County moved to intervene.  See DE 12.  The Court granted this motion on June 13, 2012, finding that Broward County was entitled to intervene as a matter of right.  See DE 17.

## II. DISCUSSION

### A. Legal Standards.

To obtain a preliminary injunction, a plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the defendant is not enjoined; (3) the threatened injury to plaintiff outweighs the harm an injunction may cause defendant; and (4) the injunction would not disserve the public interest. See Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003) (quoting McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir.1998) (internal citations and quotations omitted)).

The National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370h, is "essentially a procedural statute that requires federal agencies to inform themselves of the environmental effects of proposed federal actions." Fla. Keys Citizens Coal., Inc. v. U.S. Army Corps of Eng'rs, 374 F. Supp. 2d 1116, 1123 (S.D. Fla. 2005) (citing Sierra Club v. U.S. Army Corps of Eng'rs, 295 F.3d 1209, 1214 (11th Cir. 2002)). When an agency proposes any "major [f]ederal action[] significantly affecting the quality of the human environment," NEPA mandates the preparation of an environmental impact statement ("EIS"). 42 U.S.C. § 4332(2)(C). "Agencies are not required to duplicate the work done by another federal agency which also has jurisdiction over a project." Sierra Club, 295 F.3d at 1215. When a project has both a lead agency and cooperating agencies, a cooperating agency may adopt an EIS signed by a lead agency, provided it

3

conducts "an independent review of the statement" and finds that its "comments and suggestions have been satisfied." Id. (quoting 40 C.F.R. § 1506.3(c)).

"If, after the original EIS is prepared, the agency 'makes substantial changes in the proposed action that are relevant to environmental concerns,' or if there are 'significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts,' the agency is required to prepare a supplemental environmental impact statement" ("SEIS"). Id. (quoting 40 C.F.R. § 1502.9(c)(1)). The standard for determining when a SEIS is required is "essentially the same" as the standard for determining when an EIS is required. Id. at 1215-16 (quoting Envtl. Def. Fund v. Marsh, 651 F.2d 983, 991 (5th Cir. Unit A July 1981)).[2] If "'the post-[original EIS] changes in the [project] will have a "significant" impact on the environment that has not previously been covered by the [original] EIS,'" a supplement is necessary. Id. at 1216 (quoting Nat'l Wildlife Fed'n v. Marsh, 721 F.2d 767, 782 (11th Cir.1983)).

The Clean Water Act ("CWA"), 33 U.S.C. § 1251, et seq., "prohibits the discharge of pollutants, including dredged spoil, into waters of the United States, except in compliance with various sections of the CWA." Fla. Keys Citizens Coal., Inc., 374 F. Supp. 2d at 1124.  Section 404(a) of the act authorizes the Secretary of the Army to issue permits for the discharge of dredged or fill material into waters of the United States. 33 U.S.C. § 1344(a).  "Waters of the United States" include wetlands. 33 C.F.R.

---

[2]      The decisions of the former United States Court of Appeals for the Fifth Circuit decided before September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981).

§ 328.3(a), (b).

"Challenges to agency action under NEPA are governed by the arbitrary-and-capricious standard set forth in the Administrative Procedure Act [("APA")], 5 U.S.C. § 706(2)(A)." Wildlaw v. U.S. Forest Serv., 471 F. Supp. 2d 1221, 1231 (M.D. Ala. 2007) (citing Marsh v. Or. Natural Res. Council, 490 U.S. 360, 375-76 (1989); N. Buckhead Civic Ass'n v. Skinner, 903 F.2d 1533, 1538 (11th Cir.1990)).[3] The APA requires that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The arbitrary and capricious review standard is a "deferential one." Wildlaw, 471 F. Supp. 2d at 1231 (citing Fund for Animals, Inc. v. Rice, 85 F.3d 535, 541 (11th Cir.1996)). The court may not substitute its own judgment for that of the agency. Id. (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); Skinner, 903 F.2d at 1539)). The court must also "look beyond the scope of the decision itself to the relevant factors that the agency considered . . . to ensure that the agency took a 'hard look' at the environmental consequences of the proposed action." Sierra Club, 295 F.3d at 1216 (citations omitted).

"An agency has met its 'hard look' requirement if it has examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. (quoting Motor Vehicle

---

[3]      This standard also applies to challenges under the CWA. Sierra Club v. U.S. Army Corps of Engr's, 935 F. Supp. 1556, 1565 & n.10 (S.D. Ala.1996).

Mfrs. Ass'n, 463 U.S. at 43 (internal quotation marks omitted)). A court may overturn an agency's decision as arbitrary and capricious under "hard look" review only if: "(1) the decision does not rely on the factors that Congress intended the agency to consider; (2) the agency failed entirely to consider an important aspect of the problem; (3) the agency offers an explanation which runs counter to the evidence; or (4) the decision is so implausible that it cannot be the result of differing viewpoints or the result of agency expertise." Id. (citing Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43).  The burden of establishing that the decision was arbitrary and capricious falls upon the party seeking to overturn the agency decision.  Sierra Club, 935 F. Supp. at 1565; Citizens for Smart Growth v. Peters, 716 F. Supp. 2d 1215, 1221 (S.D. Fla. 2010).

### B. Plaintiffs Have Failed to Demonstrate a Likelihood of Success on the Merits.

Plaintiffs first argue that they are likely to succeed on the merits.  Motion at 9.  Plaintiffs contend that the Corps violated NEPA by failing to disclose or analyze how high noise levels caused by the South Runway expansion would affect the health of Dania Beach residents despite Plaintiffs repeatedly raising this issue with the federal agencies. Id. at 10-11.  Plaintiffs also state that neither the 2008 EIS, 2011 Written Reevaluation, nor the 2011 Memorandum for Record/Environmental Assessment addressed the health effects of high noise levels on residents and that the Corps' failure to prepare a SEIS regarding these health effects "render[ed] arbitrary and capricious its decision." Id. at 11.  Finally, Plaintiffs contend that the Corps violated the CWA by approving the South Runway because a practicable alternative, i.e. the North Runway, existed which would avoid or minimize wetlands impacts. Id. at 14.

Both the Corps and Broward County dispute that Plaintiffs will suffer irreparable

6

harm. The Corps argues that it fully complied with NEPA because, as a cooperating agency, it was required to defer to the Federal Aviation Administration ("FAA") on analysis of aviation issues such as noise. Corps Response at 7. The Corps also contends that it was not required to prepare a SEIS because the 2008 EIS "extensively discusses noise impacts using an established methodology and the Corps reasonably relied upon it; information regarding health impacts was not 'new'; and a mitigation plan is in place to address the impacts of noise." Id. Finally, the Corps argues that it fully complied with the CWA and that it could not consider the North Runway proposal advocated by Plaintiffs because the FAA had already rejected this alternative as impractical. Id. at 15. The Corps also points out that the D.C. Circuit Court of Appeals in City of Dania Beach v. FAA, 628 F.3d 581, 591 (D.C. Cir. 2010), already determined that there was no practicable alternative to the proposed South Runway. Id. In its separately filed response, Broward County similarly contends that Plaintiffs' claims pursuant to NEPA, the CWA, and the APA are barred by the doctrine of claim preclusion as a result of this D.C. Circuit Court of Appeals decision. Broward County Response at 4. Broward County also argues that the Corps reasonably considered and rejected the North Runway alternative despite Plaintiffs' contention that it was a practicable alternative that would have minimized environmental impacts. See id. at 7

### 1. Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits of Their NEPA Claim.

Plaintiffs first argue that the Corps violated NEPA when approving the permit for the South Runway. Motion at 9-13. Plaintiffs contend that the Corps violated NEPA by failing to consider the impact of noise levels upon the health of residents of Dania

Beach despite being provided with studies which explained how noise levels might impact residents' cardiovascular health, hypertension, or the cognitive performance of children. Id. at 11.  Plaintiffs argue that the Corps' failure to consider these health effects and to prepare a SEIS render the Corp's decision to issue the permit arbitrary and capricious. Id. at 12.  Broward County disputes that a SEIS was necessary because the Corps was entitled to rely on the FAA's analysis of noise impacts under both NEPA and the Vision 100-Century of Aviation Reauthorization Act ("Vision 100 Act").  Broward County Response at 6.  The Corps also contends that it was required to defer to the FAA on the issue of noise impacts and that it nonetheless was not required to prepare a SEIS because "the 2008 EIS extensively discusses noise impacts using an established methodology and the Corps reasonably relied upon it; information regarding health impacts was not 'new'; and a mitigation plan is in place to address the impacts of noise."  Corps Response at 7.

"Review of NEPA claims is limited to procedural compliance with NEPA rather than the substance of the decision." Fla. Keys Citizens Coal., Inc., 374 F. Supp. 2d at 1144.  The Court may not "call into question any reasonable agency methodologies used in arriving at its conclusion." Id. (quoting Protect Key West, Inc. v. Cheney, 795 F. Supp. 1552, 1559 (S.D. Fla. 1992)).  Applying this narrow standard of review, the Court agrees with the Defendants that Plaintiffs have failed to demonstrate a likelihood of success on their NEPA claim.

As Broward County points out, the Vision 100 Act requires that "[t]he Secretary [of transportation, acting through the FAA] shall determine the reasonable alternatives to an airport capacity enhancement project at a congested airport or a project

8

designated under subsection (b)(2).  Any other Federal agency, or State agency that is

participating in a coordinated review process under this section with respect to the

project shall consider only those alternatives to the project that the Secretary has

determined are reasonable." 49 U.S.C. § 47171(k).  The Act further provides that the

FAA "shall be the lead agency for . . . airport capacity enhancement projects at

congested airports and shall be responsible for defining the scope and content of the

environmental impact statement, consistent with regulations issued by the Council on

Environmental Quality. Any other Federal agency or State agency that is participating in

a coordinated environmental review process under this section *shall give substantial

deference*, to the extent consistent with applicable law and policy, *to the aviation

expertise of the Federal Aviation Administration*.  49 U.S.C. § 47171(h) (emphasis

added).  Thus, the Corps, as a mere coordinating agency on this airport expansion

project, was required to defer to the FAA regarding all matters of "aviation expertise."

See Broward County Response at 7.[4]  This necessarily includes impacts to residents

from increased aviation noise.  See Fla. Keys Citizens Coal., Inc., 374 F. Supp. 2d at

1157 (finding that the Corps could rely upon the judgment of other agencies with

particular expertise related to managing sensitive marine environments); Nat'l Mitigation

---

[4]     In their reply to Broward County's Response, Plaintiffs assert that "[i]t has
come to Plaintiffs' attention that the Corps was *not a cooperating agency at all*, which
weakens Defendants' position even further."  Broward County Reply at 3 n.1 (citing
April 3, 2008 email frm the FAA to the Corps, Exhibit A to the Broward County Reply
[DE 28-1] (emphasis in original).  The Court disagrees.  While this email does state the
that Corps "is not a cooperating agency" on the EIS, no where does it state that the
Corps is the lead agency. Furthermore, as pointed out by counsel for the Corps at the
July 3, 2012 hearing, the FAA Record of Decision contains numerous references to the
Corps' role as a coordinating agency.  See FAA Record of Decision, Exhibit C to the
Corps' Response [DE 15-3] at 7, 79, 99-100.

Banking Ass'n v. U.S. Army Corps of Eng'rs, No. 06-cv-2820, 2007 WL 495245, at *22 (N.D. Ill. Feb. 14, 2007) (noting that "[w]here multiple agencies are involved, a lead agency prepares an EIS and a cooperating agency can adopt that EIS if it independently reviews the EIS and is satisfied that its comments and suggestions are satisfied.").

Moreover, the Court agrees with the Corps that the scope of its environmental review was properly limited to the impact of the runway expansion on the nearby wetlands. See Corps Response at 7-9. "Although it specifies a broad range of impacts which must be considered, NEPA does not expand the authority of the Corps to either approve or disapprove activities outside waters of the United States." Environmental Quality; Procedures for Implementing the National Environmental Policy Act (NEPA), 53 Fed. Reg. 3120, 3121 (Feb. 3, 1988) (to be codified at 33 C.F.R. pt. 230, 325). Here, as the Corps points out, it determined that its jurisdiction was "limited to the work in jurisdictional waters" because the project was "under the purview of the FAA." October 21, 2011 Memorandum for Record, Exhibit 3 to the Declaration of Angela F. Benjamin [DE 4-8] at 8. The Corps' decision to limit its review to the waters impacted by the project should be accorded deference. Fla. Wildlife Fed'n v. U.S. Army Corps of Engr's, 401 F. Supp. 2d 1298, 1312 (S.D. Fla. 2005) (citing Marsh, 490 U.S. at 375-76). Plaintiffs therefore have failed to demonstrate a likelihood that this decision will be found arbitrary and capricious.[5]

---

[5]    In their reply to the Corps' Response, Plaintiffs contend that "regulations prohibit the Corps from limiting its analysis to the direct effects of filling wetlands and ignoring indirect and cumulative effects, as it has done here." Corps Reply at 4. This argument misstates the issue. Where, as here, the project was under the control of

Even if the Corps was required to independently consider aviation noise impacts, Plaintiffs have failed to establish that it is likely that the Corps' failure to prepare a SEIS will be found arbitrary and capricious.  A SEIS should only be prepared when new circumstances "present a *seriously* different picture of the environmental impact of the proposed project from what was previously envisioned." Fla. Keys Citizens Coal., Inc., 374 F. Supp. 2d at 1145 (citations and internal quotation marks omitted) (emphasis in original).  The record here establishes that noise impacts were considered in the 2008 EIS.  See June 2008 Final Environmental Impact Statement, Exhibit 1 to the Declaration of Angela F. Benjamin [DE 4-4] at 7-19; [DE 4-5] at 1-2.  Additionally, as the Corps points out, back in January 2008, before the EIS was issued, Plaintiffs "provided FAA with more than ten recent studies that linked high aviation noise levels with stress-related health impacts." Compl. ¶ 33.  The 2008 EIS reflects that the FAA received a comment regarding the adverse health effects of airport noise, but decided to apply its existing aviation noise methodology.  June 2008 Final Environmental Impact Statement, Exhibit 1 to the Declaration of Angela F. Benjamin [DE 4-5] at 17.  Thus, Plaintiffs have failed to demonstrate that the Corps failed to take a "hard look" at the health effects of

---

another federal agency, the Corps was permitted to adopt the EIS of the lead agency. See 40 C.F.R. § 1506.3(a) (stating that cooperating agency may adopt lead agency's EIS if it concludes that its NEPA requirements have been satisfied); see also North Carolina v. City of Va. Beach, 951 F.2d 596, 605 (4th Cir. 1991) (holding that Federal Energy Regulatory Commission was not required to perform NEPA review over portions of the project over which it did not have jurisdiction where NEPA "requirements were previously satisfied by the Corps"); Cal. Trout v. Schaefer, 58 F.3d 469, (9th Cir. 1995) (limiting scope of Corps review to effects of filling wetlands where another agency had the responsibility of protecting fisheries).

aviation noise or that the 2011 Word Health Study constitutes "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts" sufficient to require a SEIS.  See 40 C.F.R. § 1502.9(c)(1); City of Bridgeton v. FAA,  212 F.3d 448, 459 (8th Cir. 2000) (declining to "second-guess the FAA's noise level findings" because "[t]he agency, not a reviewing court, is entrusted with the responsibility of considering the various modes of scientific evaluation and theory and choosing the one appropriate for the given circumstances.") (citations and internal quotation marks omitted).[6]

### 2. Plaintiffs are Collaterally Estopped from Arguing that the North Runway Alternative was a Practicable Alternative.

Broward County contends that "[t]hrough this suit, the City of Dania Beach is collaterally attacking the FAA EIS and ROD on the same grounds it asserted, or could have asserted, in the D.C. Circuit litigation."  Broward County Response at 6. According to Broward County, the City of Dania Beach is "precluded from challenging the Corps' decision to adopt the FAAs EIS, ROD, and alternatives analysis, because the City already challenged the very basis for that decision and lost."  Id.  In their reply to Broward County's Response, Plaintiffs dispute that claim preclusion applies here. Broward County Reply at 2-3.  They fail, however, to address whether issue preclusion

---

[6]     Plaintiffs state that the only mention of health effects related to aviation noise in the 2008 EIS is an FAA response to Plaintiffs' comment "buried in an appendix to the 2008 EIS."  Corps Reply at 2.  Plaintiffs argue that this cannot possibly constitute a "'hard look' sufficient to comply with NEPA."  Id.  Because the Court may not determine the appropriate "mode[] of scientific evaluation and theory" that the Corps must apply, the Court finds that Plaintiffs have failed to meet their burden of establishing a likelihood of success on the merits of their NEPA claim.  See City of Bridgeton, 212 F.3d at 459.

might apply.

"The doctrine of claim preclusion (or res judicata) bars the parties to an action from relitigating matters that were or could have been litigated in an earlier suit." Shurick v. Boeing Co., 623 F.3d 1114, 1116 (11th Cir. 2010). A claim is barred "whenever (1) a court of competent jurisdiction has (2) rendered a final judgment on the merits in another case involving (3) the same parties and (4) the same cause of action." Id. at 1116-17 (citing Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999)). The doctrine of issue preclusion or collateral estoppel "precludes the re-adjudication of the same issue, where the issue was actually litigated and decided in the previous adjudication, even if it arises in the context of a different cause of action." Cmty. State Bank v. Strong, 651 F.3d 1241, 1263-64 (11th Cir. 2011). Where as here, the decision which supposedly has preclusive effect was rendered by a federal court, federal law of issue preclusion applies. CSX Transp., Inc. v. Bhd. of Maint. of Way Emps., 327 F.3d 1309, 1316 (11th Cir. 2003). Under federal law, for issue preclusion to apply, "(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." Id. at 1317 (quoting I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir.1986)).

Here, the City of Dania Beach previously challenged the FAA's approval of

13

Alternative B1b, the South Runway. <u>City of Dania Beach</u>, 628 F.3d at 583. In that

litigation, the City of Dania Beach challenged the approval of the South Runway under

the Airport and Airway Improvement Act, the Department of Transportation Act of 1966,

and Executive Order 11,990.[7] <u>Id.</u> at 584. Here, Plaintiffs bring their challenge pursuant

to NEPA and the CWA. Thus, because there is not overlap between the causes of

action, the Court disagrees with Broward County that claim preclusion applies.

Nonetheless, the Court finds the analysis of the D.C. Circuit regarding the practicability

of the North Runway persuasive and preclusive.

The D.C. Circuit found that "[e]ven assuming for the purposes of argument that

Alternative C1 [the North Runway] would cause no impacts to wetlands, the FAA's

determination was not arbitrary and capricious. . . . Alternative C1's inferiority to

Alternative B1b, in its longer delays (particularly in poor weather) and the safety

drawbacks of the requisite runway-crossing, render it not only imprudent under §

47106(c)(1)(B) [of the Airway Improvement Act of 1982]  but impracticable under the

Executive Order." <u>City of Dania Beach</u>, 628 F.3d at 591. Thus, applying the same

arbitrary and capricious review standard the Court must apply here, Plaintiff City of

Dania Beach already litigated the issue of whether the North Runway presents a

practicable alternative for Airport expansion. Because the City of Dania Beach had a

full and fair opportunity to litigate this issue before the DC Circuit, the Court finds that

---

[7]     Executive Order 11,990, § 2(a), 42 Fed. Reg. 26,961 (May 24, 1977),
conditions federal assistance for construction in wetlands on a finding that there is no
practicable alternative. Actions taken pursuant to Executive Order 11,990 are subject
to the same standard of review under the APA as actions under NEPA and the CWA.
<u>Nat'l Wildlife Fed'n v. Babbitt</u>, No. 88-0301,1993 WL 304008, at *8-9 (D.D.C. July 30,
1993).

Plaintiffs are collaterally estopped from arguing before this Court that the North Runway alternative presents a practicable alternative for the Airport's expansion plans. See City of Dania Beach, 628 F.3d at 584 (finding that "the agency was not arbitrary or capricious in viewing Alternative C1 as 'impracticable' within the meaning of the Executive Order.").

The heart of Plaintiffs' Clean Water Act claim is that the Corps violated the CWA by not selecting an alternative that was not the least environmentally damaging practicable alternative. Motion at 14. Under the CWA regulations, "no discharge of dredged or fill material shall be permitted if there is a practicable alternative to the proposed discharged which would have less adverse impact on the aquatic ecosystem." 40 C.F.R. § 230.10(a). The regulations further provide that "[a]n alternative is practicable if it is available and capable of being done after taking into consideration cost, existing technology, and logistics in light of overall project purposes." 40 C.F.R. § 230.10(a)(2). Plaintiffs argue throughout their Motion that the North Runway is a practicable alternative to the South Runway. See, e.g., Motion at 14 ("The record shows that the North Parallel Runway (Alternative C1) is such a practicable alternative."). Plaintiffs contend that the "Corps' reasons for rejecting the North Parallel Runway as impracticable are legally invalid."[8] Id. at 15. However, because the D.C.

---

[8]     Specifically, Plaintiffs contend that (1) CWA regulations do not allow the Corps to reject an alternative because the applicant is unwilling to do it; (2) the North Runway Alternative "would achieve the planning target of maintaining average annual operational delays in 2010 below 6 minutes;" (3) the relocation of ground facilities does not render the North Runway impracticable from a constructability or cost standpoint; and (4) increased runway crossings and the need for additional air traffic control coordination necessitated by the North Runway do not render that alternative "unsafe."

Circuit already rejected The City of Dania Beach's argument that the North Runway was a practicable alternative, the Court finds that Plaintiffs are unlikely to succeed on the merits of their challenge to the permit under the Clean Water Act.[9]

### 3. Even if Plaintiffs Are Not Collaterally Estopped From Arguing that the North Runway Alternative was a Practicable Alternative, They Still Have Failed to Demonstrate a Likelihood of Success on the Merits of Their Clean Water Act Claim.

Even if the D.C. Circuit's opinion in City of Dania Beach does not have preclusive effect, Plaintiffs have still failed to demonstrate a likelihood of success on the merits of their CWA claim. The FAA determined that the North Runway was not a reasonable alternative due to delay, capacity, displacement, and limited potential future development. FAA Record of Decision, Exhibit C to the Corps' Response [DE 15-3] at 53. Pursuant to the Vision 100 Act, the Corps was required to give deference to the FAA's expertise and determination that this alternative did not serve the project purpose. 49 U.S.C. § 47171(h); Nat'l Mitigation Banking Ass'n , 2007 WL 495245, at *27 ("The Vision 100 Act makes the Corps's conclusion unassailable."). As the Northern District of Illinois held in National Mitigation Banking Association v. United

---

Motion at 15-16.

[9]    Plaintiffs argue that "there is a different-and-lesser-legal standard governing practicability under the Executive Order than there is under the Clean Water Act." Motion at 16 n.6. The Court finds this argument unpersuasive. In addition to finding the North Runway alternative impracticable under Executive Order 11,990, the D.C. Circuit also concluded that this alternative was "imprudent" within the meaning of § 47106(c)(1)(B) of the Airport and Airway Improvement Act. Even if the Court were to find that Plaintiffs are not collaterally estopped from arguing that the North Runway is a practicable alternative, the issue here is whether Plaintiffs are likely to succeed on the merits of their CWA claim. The Court finds the D.C. Circuit's opinion highly persuasive that Plaintiffs are unlikely to succeed on the merits of their CWA claim, as discussed in more detail in subsection 3 below.

States Army Corps of Engineers, a case involving a challenge to a permit issued by the Corps to fill wetlands in conjunction with proposed expansion of Chicago's O'Hare International Airport, "[r]equiring the Corps to consider other alternatives would only waste the Corps's time, because alternatives rejected by the FAA could never be selected." 2007 WL 495245, at *24; see also Nat'l Mitigation Banking Ass'n , 2007 WL 495245, at *27 ("Because the FAA found the off-site and blended alternatives to be unreasonable, the Corps was prohibited from considering them in further detail and was not arbitrary or capricious in declining to do so."). That court also noted that "it was not arbitrary and capricious for the Corps to rely on the conclusions in the FEIS regarding which alternatives were reasonable under NEPA"[10] when the District of Columbia Circuit had previously found that the FAA "acted with great care in conducting its analysis for the EIS and ROD." Id. at *25 (citations and internal quotation marks omitted). Similarly here, because the FAA rejected the North Runway alternative, the Corps was not required to consider this alternative when issuing the permit.[11]

Because the Court has found that Plaintiffs have failed to meet their burden as to the first factor, the Court will deny the Motion. See Fla. Clean Water Network, Inc. v. Grosskruger, No. 3:08-cv-120-J-32TEM, 2008 WL 435156, at *1 (M.D. Fla. Feb. 14,

---

[10]    The court later went on to say that "[t]he corps was justified in relying on that conclusion in the CWA context just as it was in the NEPA context discussed above." Nat'l Mitigation Banking Ass'n, 2007 WL 495245, at *27.

[11]    Moreover, the North Runway alternative advocated by Plaintiffs was projected to impact 15.41 acres of wetlands versus 15.40 for the selected South Runway alternative. FAA Record of Decision, Exhibit C to the Corps' Response [DE 15-3] at Table 3, p. 36. Thus, the effect on the waters of the United States was similar under both alternatives.

2008) ("Plaintiffs having failed to demonstrate a substantial likelihood of success as to any of their claims against the Corps, the Court need not determine whether the other prongs of the injunction standard are met."). However, even if the Court were to find for the Plaintiffs as to this factor, the Court would nonetheless deny the Motion because, as discussed below, Plaintiffs have also failed to meet their burden as to the other three factors.

### C. Plaintiffs Have Failed to Demonstrate a Threat of Irreparable Injury.

Plaintiffs contend that they will suffer irreparable injury in the absence of an injunction because initial steps to build the South Runway extension have begun and will continue during the course of the proceedings. Motion at 17.[12] According to Plaintiffs, destruction of the wetlands, noise and air impacts from continued construction, visual blight from the runway, and "the risk implied by a violation of NEPA" are irreparable injuries that Plaintiffs will suffer. Id. at 17-18. Both Defendants challenge whether Plaintiff has demonstrated a threat of irreparable injury. The Corps contends that because Plaintiffs waited more than seven months before seeking an

---

[12]     In their reply to Broward County's Response, Plaintiffs assert that since this lawsuit was filed, Broward County "has *increased* the rate at which it is filling the wetlands." Broward County Reply at 5 (emphasis in original). To support this contention, Plaintiffs rely upon the Declaration of Christopher Johnston, an individual who has claimed to have regularly visited the construction site since April 2012 "to monitor the pace of work." Declaration of Christopher Johnston, Exhibit B to Broward County Reply [DE 28-2] ¶ 2. The Court does not find this evidence compelling. Mr. Johnston's Declaration does not establish that wetlands are being filled due to the lawsuit rather than according to the existing schedule of work. Additionally, at the July 3, 2012 oral argument, counsel for Broward County stated on the record that the Youtube videos referenced in Mr. Johnston's Declaration are actually of the County's construction staging area and not wetlands.

injunction "protection of the wetlands was not previously in the forefront of Plaintiffs' concerns related to the Runway project." Corps Response at 17. Broward County asserts that neither of Plaintiffs' alleged irreparable injuries–destruction of wetlands and construction impacts–are "irreparable or particularly injurious to Plaintiffs." Broward County Response at 12.

The Court finds that Plaintiffs have failed to demonstrate that they will suffer an irreparable injury. As Broward County points out, Plaintiffs have alleged "no particular personal connection with or benefit from the impacted wetlands, alleging only general platitudes about wetlands." Broward County Response at 12. Moreover, Plaintiffs' complaints about construction noise, dust, and visual blight are not tied to their causes of action which concern the impact of aviation noise upon the residents of Dania Beach. See id. Plaintiffs will not suffer any supposed ill effects from aviation noise while the runway is still under construction. See id. Finally, as the Corps points out, the permit to fill 8.87 acres of federal wetlands and to secondarily impact 39.17 acres of wetlands, was issued on November 8, 2011, and includes substantial mitigation measures. See Corps Response at 18; Permit, Exhibit 12 to the Declaration of Angela F. Benjamin  [DE 4-19]. Accordingly, Plaintiff has failed to articulate why they now face irreparable injury if the wetlands are destroyed.

**D. The Balance of Equities Do Not Weigh in Favor of a Preliminary Injunction.**

Plaintiffs also argue that the irreparable injuries they will suffer outweigh the harms that might be suffered by the Corps as a result of any delay. Motion at 19. Plaintiffs argue that the Corps "would not be affected in any significant way by an

19

injection, because it would only be required to reconsider its permit decision." Id.
Plaintiffs further argue that any costs of delay suffered by the Broward County Aviation
Department would not be irreparable and would be minimal compared to the
"irreparable harm to the Plaintiffs' environmental interests." Id.  Plaintiffs also contend
that Broward County's claims of harm are "exaggerated" and that Broward County
brought any harm related to delay upon itself.  Broward County Reply at 7.  Broward
County disputes that it would not suffer irreparable harm from a delay.  Broward County
Response at 12-13.  According to Broward County, it has already expended
approximately $82 million dollars in land acquisition, planning, design, and construction
for the South Runway project.  Id. at 13 (citing Declaration of David Roepnack, Exhibit 3
to Broward County Response [DE 22-3] ("Roepnack Decl.") ¶ 4).  Broward County also
asserts that Plaintiffs' claim that the North Runway alternative would save the County
$276 million is disingenuous because Plaintiffs ignore the costs of delay and redesign if
the Plaintiffs could somehow require construction of this alternative.  Id.  The Corps
adds that the South Runway alternative, actually selected by the FAA, provides
enormous public benefits.  Corps Response at 20.

        The Court agrees with Defendants that the alleged injury to the Plaintiffs does
not outweigh the harm an injunction would cause Defendants.  As discussed in Section
C above, Plaintiffs have failed to demonstrate an irreparable injury.  Given the immense
costs to Broward County and the community at large if the construction is halted or
otherwise delayed, the balance of the equities weigh in favor of denying the Motion.
See Roepnack Decl. ¶ 12 (noting that aggregate delay costs would total $66,175 per

day or $1,985,250 per 30-day month); Declaration of Stephen Belleme, Exhibit E to Broward County Response [DE 22-5] ¶ 3 (noting that the total economic effect of the runway expansion project is 11,000 jobs and $1.4 billion); Declaration of Douglas Webster, Exhibit D to Broward County Response [DE 22-4] ¶ 9 (noting that construction of the runway expansion project has been timed so that the Airport will only have to suffer one peak season with one runway).[13]

### E. The Public Interest Would Not Be Served by a Preliminary Injunction.

Finally, Plaintiffs contend that the public interest will be served by issuance of a preliminary injunction because "[i]t is in the public interest to require the Corps to follow the law. . . [and] to prevent the destruction of irreparable wetlands and the visual blight, and noise and air impacts that will result from construction of the South Runway." Motion at 20. As discussed above, both Broward County and the public would not be served by a delay of the South Runway construction. As the Corps notes, the South Runway alternative is designed to "address[] long-term capacity needs, and ensures the availability of future expansion and growth at the airport." Corps Response at 20. Given the vast costs of delay–both monetary and an increase in the time required to complete the South Runway expansion project– and Plaintiffs failure to articulate sufficient threat of irreparable injury, the Court finds that the public interest would not be

---

[13]      Given that a permit has already been issued by the Corps, Broward County is proceeding with the construction in accordance with that permit, and it is Plaintiffs, not Broward County, who seek to change the status quo, the Court disagrees that Broward County brought harm upon itself by proceeding with construction contracts. See Broward County Reply at 7-8. As noted in note 12, supra, the Court does not believe that Plaintiffs have sufficiently substantiated their claims that Broward County has accelerated filling of wetlands in response to the filing of this lawsuit.

served by an injunction.[14]

### III. CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Preliminary Injunction [DE 4] is

**DENIED**.  The Court will enter a separate order regarding scheduling of this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this _6th_ day of July, 2012.

JAMES I. COHN
**United States District Judge**

Copies provided to counsel of record via CM/ECF.

---

[14]     Because the Court has determined that Plaintiffs are not entitled to a preliminary injunction, the Court does not consider Broward County's request that Plaintiffs be required to post an injunction bond.  See Broward County Response at 15-17.