UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60989-CIV-COHN/OTAZO-REYES

CITY OF DANIA BEACH, FLORIDA,
et al.,

        Plaintiffs,

vs.

U.S. ARMY CORPS OF ENGINEERS,

        Defendant,

and

BROWARD COUNTY, FLORIDA,

        Intervenor/Defendant.

_____/

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT U.S. ARMY CORPS OF ENGINEERS' CROSS MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT/INTERVENOR BROWARD COUNTY'S CROSS MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Summary Judgment [DE 53] ("Plaintiffs' Motion"), Defendant/Intervenor Broward County's Cross-Motion for Summary Judgment [DE 57] ("Broward County Motion"), and Defendant U.S. Army Corps of Engineers' Cross-Motion for Summary Judgment [DE 59] ("Corps Motion") (collectively "Motions"). The Court has carefully considered the Motions, the replies thereto, the administrative record[1], and is otherwise fully advised in the premises.

---

[1]     On July 20, 2012, the Court granted Defendant U.S. Army Corps of Engineers' motion to file the record conventionally. See DE 35. All references to the Administrative Record will be designated "AR" followed by the page number.

I. BACKGROUND

## A. Procedural History.

Plaintiffs City of Dania Beach, Rae Sandler, and Grant Campbell (collectively "Plaintiffs") filed suit against Defendant U.S. Army Corps of Engineers (the "Corps") on May 23, 2012.  Complaint [DE 1].  The Complaint challenged a permit the Corps issued which allowed Defendant/Intervenor Broward County[2] to fill approximately 8.87 acres of wetlands and secondarily impact 39.17 acres of wetlands in order to expand Runway 9R/27L ("South Runway") at the Fort Lauderdale-Hollywood International Airport (the "Airport").  Id. ¶ 1.  Plaintiffs contended that the Corps issued the permit without considering the impact of increased noise levels on the health of residents in neighborhoods in the City of Dania Beach, thus violating both the National Environmental Policy Act ("NEPA") and the Clean Water Act ("CWA").  Id. ¶ 2.  Plaintiffs further argued that the Corps authorized the permit for the South Runway despite another practicable alternative, namely a north parallel runway ("North Runway"), which would have resulted in less noise and environmental impacts.  Id. ¶ 3.

On May 24, 2012, Plaintiffs filed a motion for preliminary injunction to enjoin further construction of the South Runway while the Court considered Plaintiffs' Complaint on the merits.  See DE 4.  The Court denied the motion for preliminary injunction on July 6, 2012.  See DE 30.  Additionally, the Court found that Plaintiffs were collaterally estopped from arguing that the North Runway alternative presents a

---

[2]      On June 6, 2012, Broward County moved to intervene.  See DE 12.  The Court granted this motion on June 13, 2012, finding that Broward County was entitled to intervene as a matter of right.  See DE 17.

practicable alternative for the Airport's expansion plans.  See DE 30 at 14-15.  On

August 20, 2012, Plaintiffs filed an Amended Complaint.  See DE 41.  In the Amended

Complaint, Plaintiffs seek a declaration from this Court that the permit issued by the

Corps violates NEPA, the CWA, and the Administrative Procedure Act ("APA"), to

vacate the Corps' record of decision and the permit, and to enjoin the Corps and

Broward County (collectively "Defendants") from any further construction of the South

Runway until it complies with NEPA, the CWA, and the APA.  Am. Compl. at 17.  The

parties have now filed cross motions for summary judgment.

## B. Relevant Facts.

In 1994, expansion of runways at the Airport was proposed to accommodate

existing and projected demand.  AR 05124-25.  In 1996, the Federal Aviation

Administration ("FAA") began NEPA review of the proposed expansion.  Id.  As the lead

agency, the FAA, coordinating with other federal, state, local, and tribal entities,

prepared an environmental impact statement ("EIS") regarding the potential

environmental impacts of the proposed runway expansion project.  AR 06128;

06331-33.  The Corps participated in the EIS process, offering expertise on impacts to

wetlands and other matters within the Corps' jurisdiction. See, e.g., AR 00011-12;

00013-20; 00041-44; 06239; 06308; 06311; 06322; 06331-33; 21671.

The City of Dania Beach provided studies to the FAA regarding aviation noise

and its potential health impacts.  AR 17569-75.  FAA responded to these comments,

along with many hundreds of others from Dania Beach and other parties. See AR

03799-4660; 04702-05031.  After approximately thirteen years of ongoing

environmental review, the FAA released the final environmental impact statement

3

("FEIS") in June 2008 and thereafter the Record of Decision ("ROD") in December

2008.  AR 00048-6221; 06232-823.  The City of Dania Beach challenged the ROD in

the Court of Appeals for the District of Columbia, arguing that the FAA's determination

that the City's preferred expansion option, Alternative C1, was impracticable was

arbitrary and capricious and that FAA should have selected a different runway

expansion alternative.  The Court of Appeals upheld the FAA's decision.  City of Dania

Beach v. FAA, 628 F.3d 581 (D.C. Cir. 2010); AR 13198-226.

Broward County then applied for a permit to fill approximately 8.87 acres of

wetlands for the expansion of Runway 9R/27L at the Airport.  AR 10822-13197. The

Corps provided the first public notice for the permit on March 1, 2011.  AR 13365-89.

On March 29, 2011, in response to the first public notice, Plaintiffs' counsel submitted to

the Corps a six page letter, AR 16834-39, and enclosed over three thousand pages of

materials.  AR 13611-16833.  Although the public comment period was scheduled to

close on March 31, 2011, the Corps extended the comment period for an additional two

weeks.  AR 16885.  During the extended public comment period, Plaintiffs' counsel sent

another letter to the Corps, enclosing the same noise related articles and studies

previously provided to the FAA in January 2008, as well as a 2011 World Health

Organization report on noise ("WHO Report").  AR 17464-845.

The Corps directed these comments to the FAA who responded that noise

impacts were adequately analyzed using its accepted methodology, and would be

significantly mitigated through the ongoing noise abatement programs.  AR 21330.  On

May 31, 2011, the Corps issued a second public notice, AR 19488-524, and extended

the public comment period for an additional 30 days.  AR 19494.  In July 2011, the FAA

4

prepared a Written Re-Evaluation of the FEIS which again addressed noise impacts and mitigation.  AR 19934-20065.  Plaintiffs did not challenge this Written Re-Evaluation.  The Corps then issued its Memorandum for Record/Environmental Assessment ("MFR/EA") in October 2011, AR 21664-737, and shortly thereafter, the permit at issue here.  AR 21745-89.

## II. DISCUSSION

### A. Legal Standards.

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must demonstrate a lack of evidence supporting the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

As long as the non-moving party has had an ample opportunity to conduct

5

discovery, it must come forward with affirmative evidence to support its claim.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be enough

of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911

F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is

merely colorable, or is not significantly probative, summary judgment may be granted."

Anderson, 477 U.S. at 249-50 (citations omitted).

    NEPA, 42 U.S.C. §§ 4321-4370h, is "essentially a procedural statute that

requires federal agencies to inform themselves of the environmental effects of

proposed federal actions."  Fla. Keys Citizens Coal., Inc. v. U.S. Army Corps of Eng'rs,

374 F. Supp. 2d 1116, 1123 (S.D. Fla. 2005) (citing Sierra Club v. U.S. Army Corps of

Eng'rs, 295 F.3d 1209, 1214 (11th Cir. 2002)).  When an agency proposes any "major

[f]ederal action[] significantly affecting the quality of the human environment," NEPA

mandates the preparation of an EIS.  42 U.S.C. § 4332(2)(C).  "Agencies are not

required to duplicate the work done by another federal agency which also has

jurisdiction over a project."  Sierra Club, 295 F.3d at 1215.  When a project has both a

lead agency and cooperating agencies, a cooperating agency may adopt an EIS signed

by a lead agency, provided it conducts "an independent review of the statement" and

finds that its "comments and suggestions have been satisfied."  Id. (quoting 40 C.F.R. §

1506.3(c)).

    "If, after the original EIS is prepared, the agency 'makes substantial changes in

the proposed action that are relevant to environmental concerns,' or if there are

'significant new circumstances or information relevant to environmental concerns and

6

bearing on the proposed action or its impacts,' the agency is required to prepare a supplemental environmental impact statement (SEIS)." Id. (quoting 40 C.F.R. § 1502.9(c)(1)).  The standard for determining when a SEIS is required is "essentially the same" as the standard for determining when an EIS is required.  Id. at 1215-16 (quoting Envtl. Def. Fund v. Marsh, 651 F.2d 983, 991 (5th Cir. Unit A July 1981)).[3]  If "'the post-[original EIS] changes in the [project] will have a "significant" impact on the environment that has not previously been covered by the [original] EIS,'" a supplement is necessary.  Id. at 1216 (quoting Nat'l Wildlife Fed'n v. Marsh, 721 F.2d 767, 782 (11th Cir. 1983)).

The CWA, 33 U.S.C. § 1251, et seq., "prohibits the discharge of pollutants, including dredged spoil, into waters of the United States, except in compliance with various sections of the CWA."  Fla. Keys Citizens Coal., Inc., 374 F. Supp. 2d at 1124. Section 404(a) of the act authorizes the Secretary of the Army to issue permits for the discharge of dredged or fill material into waters of the United States. 33 U.S.C. § 1344(a).  "Waters of the United States" include wetlands.  33 C.F.R. § 328.3(a), (b).

"Challenges to agency action under NEPA are governed by the arbitrary-and-capricious standard set forth in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)."  Wildlaw v. U.S. Forest Serv., 471 F. Supp. 2d 1221, 1231 (M.D. Ala. 2007) (citing  Marsh v. Or. Natural Res. Council, 490 U.S. 360, 375-76 (1989); N.

---

[3]        The decisions of the former United States Court of Appeals for the Fifth Circuit decided before September 30, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Buckhead Civic Ass'n v. Skinner, 903 F.2d 1533, 1538 (11th Cir.1990)).[4]  The APA
requires that a reviewing court shall "hold unlawful and set aside agency action,
findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion,
or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The arbitrary and
capricious review standard is a "deferential one."  Wildlaw, 471 F. Supp. 2d at 1231
(citing Fund for Animals, Inc. v. Rice, 85 F.3d 535, 541 (11th Cir. 1996)). The court may
not substitute its own judgment for that of the agency.  Id. (citing Motor Vehicle Mfrs.
Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); Skinner, 903 F.2d at
1539)).  The court must also "look beyond the scope of the decision itself to the relevant
factors that the agency considered . . . to ensure that the agency took a 'hard look' at
the environmental consequences of the proposed action."  Sierra Club, 295 F.3d at
1216 (citations omitted).

    "An agency has met its 'hard look' requirement if it has examine[d] the relevant
data and articulate[d] a satisfactory explanation for its action including a rational
connection between the facts found and the choice made."  Id. (quoting Motor Vehicle
Mfrs. Ass'n, 463 U.S. at 43 (internal quotation marks omitted)).  A court may overturn
an agency's decision as arbitrary and capricious under "hard look" review only if: "(1)
the decision does not rely on the factors that Congress intended the agency to
consider; (2) the agency failed entirely to consider an important aspect of the problem;
(3) the agency offers an explanation which runs counter to the evidence; or (4) the

---

[4]      This standard also applies to challenges under the CWA.  Sierra Club v.
U.S. Army Corps of Engr's, 935 F. Supp. 1556, 1565 & n.10 (S.D. Ala.1996).

decision is so implausible that it cannot be the result of differing viewpoints or the result of agency expertise." Id. (citing Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43).  The burden of establishing that the decision was arbitrary and capricious falls upon the party seeking to overturn the agency decision. Sierra Club, 935 F. Supp. at 1565; Citizens for Smart Growth v. Peters, 716 F. Supp. 2d 1215, 1221 (S.D. Fla. 2010).

### B. The Corps did not Violate NEPA.

Plaintiffs raise a number of arguments which they contend demonstrate that the Corps violated NEPA. See Plaintiffs' Motion at 10-22.  Defendants dispute these arguments and contend that the Corps complied with NEPA.  For the reasons discussed below, the Court agrees with Defendants that the Corps did not violate NEPA.  Accordingly, summary judgment is appropriate for Defendants on Plaintiffs' NEPA claim.

### 1. The Corps Took a Hard Look at the Environmental Consequences of Issuing the Permit.

Plaintiffs first argue that the Corps violated NEPA because it failed to take a hard look at the public health effects of high noise levels that would be generated by the runway expansion project.  Plaintiffs' Motion at 12.  Plaintiffs contend that the WHO Report was provided to the Corps, but it "never had any internal discussions regarding the report or the public health issues raised in it." Id.  Thus, according to Plaintiffs, because the Corps did not consider the WHO Report, it was arbitrary and capricious in its NEPA compliance. Id.  In opposition, Broward County argues that "the Corps reasonably relied upon the FAA's analysis of noise impacts."  Broward County Motion at 6.  The Corps similarly argues that "as a coordinating agency with a relatively minor role

in the overall project, [it] properly defined the scope of its NEPA obligations, duly relied upon the FAA's aviation expertise, and fully analyzed the environmental impacts of their actions."  Corps Motion at 9.[5]

"Review of NEPA claims is limited to procedural compliance with NEPA rather than the substance of the decision."  Fla. Keys Citizens Coal., Inc., 374 F. Supp. 2d at 1144.   The Court may not "call into question any reasonable agency methodologies used in arriving at its conclusion."  Id. (quoting Protect Key West, Inc. v. Cheney, 795 F. Supp. 1552, 1559 (S.D. Fla. 1992)).  Because the permit was issued as part of an airport capacity enhancement project, the Vision 100-Century of Aviation Reauthorization Act ("Vision 100 Act") impacts this analysis.  The Vision 100 Act requires that:

> [t]he Secretary [of transportation, acting through the FAA] shall determine the reasonable alternatives to an airport capacity enhancement project at a congested airport or a project designated under subsection (b)(2).  Any other Federal agency, or State agency that is participating in a coordinated review process under this section with respect to the project shall consider only those alternatives to the project that the Secretary has determined are reasonable.

49 U.S.C. § 47171(k).  The Vision 100 Act further provides that the FAA:

> shall be the lead agency for . . . airport capacity enhancement projects at congested airports and shall be responsible for defining the scope and content of the environmental impact statement, consistent with regulations issued by the Council on Environmental Quality.  Any other Federal agency or State agency that is participating in a coordinated environmental review process under this section *shall give substantial deference*, to the extent consistent with applicable law and policy, *to the aviation expertise of the Federal Aviation Administration*.

49 U.S.C. § 47171(h) (emphasis added).

---

[5]      Page references to the Corps Motion refers to the CM/ECF pagination.

## a. The Corps' Scope of Analysis was Appropriate.

Plaintiffs argue that the Corps failed to consider the public health effects of increased aviation noise and "it improperly limited its scope of analysis to the direct impacts of filling the wetlands."  Plaintiffs' Motion at 12.  Specifically, Plaintiffs argue that the permit "is a necessary precondition to the South Runway's extension," thus the Corps was required to examine all environmental impacts resulting from the issuance of the permit.  Id. at 13.  According to the Corps, however, its "decision to focus its environmental review on the effects of the permitted activity was entirely reasonable, and is due deference."  Corps Motion at 10.  Broward County also asserts that the Corps' scope of review was appropriate because it prepared its own independent environmental assessment to address the direct, secondary, and cumulative impacts to wetlands and participated in and incorporated the FAA's FEIS related to noise-related impacts.  Broward County Motion at 10.

As this Court has previously held, the Corps, as a mere coordinating agency[6] on this airport expansion project, was required to defer to the FAA regarding all matters of "aviation expertise" which includes impacts to residents from increased aviation noise.  See Fla. Keys Citizens Coal., Inc., 374 F. Supp. 2d at 1157 (finding that the Corps could rely upon the judgment of other agencies with particular expertise related to managing sensitive marine environments); Nat'l Mitigation Banking Ass'n v. U.S. Army

---

[6]     Plaintiffs reassert their argument that the Corps was not a cooperating agency.  Plaintiffs' Motion at 19 (citing AR 00360).  This argument once again misstates the issue.  Because the Corps and FAA executed a Memorandum of Understanding, it is clear that the Corps was not the lead agency and aided the FAA in the preparation of the EIS.  Corps Motion at 8 & n.1; AR 00011-12.  Indeed, the ROD reflects that the FAA coordinated with agencies including the Corps.  See, e.g., AR 06331-32.

Corps of Eng'rs, No. 06-cv-2820, 2007 WL 495245, at *22 (N.D. Ill. Feb. 14, 2007)

(noting that "[w]here multiple agencies are involved, a lead agency prepares an EIS and

a cooperating agency can adopt that EIS if it independently reviews the EIS and is

satisfied that its comments and suggestions are satisfied.").[7]   "Although it specifies a

---

[7]     Plaintiffs assert that the Environmental Protection Agency, not the FAA, is the expert on the "effects of noise on health."  Plaintiffs' Motion at 18.  As Broward County points out, however, the statutory provision Plaintiffs rely upon for this proposition, 42 U.S.C. § 4903(c)(2) provides that: "[w]ith respect to the Federal Aviation Administration, section 44715 of Title 49 shall apply in lieu of this paragraph."  Broward County's Reply [DE 71] ("Broward County Reply") at 5 (citing 42 U.S.C. § 4903(c)(2)).  Title 49 § 44715 states that:

> To relieve and protect the public health and welfare from aircraft noise and sonic boom, the Administrator of the Federal Aviation Administration, as he deems necessary, shall prescribe--
>
> (i) standards to measure aircraft noise and sonic boom; and
>
> (ii) regulations to control and abate aircraft noise and sonic boom.

49 U.S.C. § 44715(a).  While the FAA must consult with the EPA to proscribe such standards, it is apparent that Congress has given the FAA the ability to create aircraft noise standards.  The Integrated Noise Model that the FAA employed in this case is one such standard.  See AR 94874; FAA Order 1050.1E ¶ 14.2b ("All detailed noise analyses must be performed using the most current version of the FAA's Integrated Noise Model (INM), Heliport Noise Model (HNM), or Noise Integrated Routing System (NIRS). Use of an equivalent methodology and computer model must receive prior written approval from the FAA's Office of Environment and Energy."); 14 C.F.R. § 150.9(b) ("The exposure of individuals to noise resulting from the operation of an airport must be established in terms of yearly day-night average sound level (YDNL) calculated in accordance with the specifications and methods prescribed under appendix A of this part."); U.S. Air Tour Ass'n v. FAA, 298 F.3d 997, 1008 (D.C. Cir. 2002) ("The INM is 'the most widely used civilian software program for analyzing noise effects relating to changes in airspace use.'").  Thus, the Court disagrees with Plaintiffs' contention that the Corps should not have relied upon the FAA's analysis of noise impacts.

broad range of impacts which must be considered, NEPA does not expand the authority

of the Corps to either approve or disapprove activities outside waters of the United

States."  Environmental Quality; Procedures for Implementing the National

Environmental Policy Act (NEPA), 53 Fed. Reg. 3120, 3121 (Feb. 3, 1988) (to be

codified at 33 C.F.R. pt. 230, 325).  Here, as the Corps pointed out in its MFR/EA, it

determined that its jurisdiction was "limited to the work in jurisdictional waters" because

the project was "under the purview of the FAA" and the Corps did not have "jurisdiction

to the uplands."  AR 21671.  The Corps also determined that the capacity at the Airport

could increase even without issuance of the permit.  Id.; see also AR 21745 (noting that

permit was being issued to fill 8.87 acres of wetlands and secondarily impact 39.17

acres of wetlands).  The Corps' decision to limit its review to the waters impacted by the

project should be accorded deference.  Fla. Wildlife Fed'n v. U.S. Army Corps of

Engr's, 401 F. Supp. 2d 1298, 1312 (S.D. Fla. 2005) (citing Marsh, 490 U.S. at 375-76).

Plaintiffs argue, however, that because the permit was necessary to complete

the South Runway, the Corps was obligated to analyze the effects of the entire project.[8]

Plaintiffs' Motion at 12 (citing 33 C.F.R. pt. 325 app. B § 7(b)(2)(A) ("The district

engineer is considered to have control and responsibility for portions of the project

beyond the limits of Corps jurisdiction where the Federal involvement is sufficient to turn

an essentially private action into a Federal action. These are cases where the

_____

[8]      Additionally, as the Corps points out, the U.S. Supreme Court has
rejected "but for" reasoning in the NEPA context.  Defendant U.S. Army Corps of
Engineers' Reply in Support of Cross Motion for Summary Judgment [DE 70] ("Corps
Reply") at 4 (citing Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 767 (2004)); Corps
Motion at 13 (citing same).

environmental consequences of the larger project are essentially products of the Corps permit action.")).  As noted above, the Corps' determination that the capacity at the airport would increase even without issuance of the permit should be accorded deference.  See AR 21671.  Moreover, this argument misstates the issue.  Where, as here, the project was under the control of another federal agency, the Corps was permitted to adopt the EIS of the lead agency.  See 40 C.F.R. § 1506.3(a) (stating that cooperating agency may adopt lead agency's EIS if it concludes that its NEPA requirements have been satisfied); see also Sierra Club, 295 F.3d at 1215  ("Agencies are not required to duplicate the work done by another federal agency which also has jurisdiction over a project."); Cal. Trout v. Schaefer, 58 F.3d 469, 474 (9th Cir. 1995) (limiting scope of Corps review to effects of filling wetlands where another agency had the responsibility of protecting fisheries); North Carolina v. City of Va. Beach, 951 F.2d 596, 605 (4th Cir. 1991) (holding that Federal Energy Regulatory Commission was not required to perform NEPA review over portions of the project over which it did not have jurisdiction where NEPA "requirements were previously satisfied by the Corps"); Nat'l Mitigation Banking Ass'n, 2007 WL 495245, at *22 ("Whenever an agency has prepared a broad EIS, and a subsequent statement or EA is then prepared regarding a component of the larger project, the subsequent EA need only summarize the issues discussed in the broader statement and incorporate discussions from that statement by reference, concentrating instead on matters specific to the subsequent action.").  Thus, the issue before this Court is whether the Corps conducted "an independent review of the statement" and found that its "comments and suggestions have been satisfied."  See Sierra Club, 295 F.3d at 1215 (quoting 40 C.F.R. § 1506.3(c)).

14

### b. The Corps Properly Incorporated by Reference the FEIS.

Plaintiffs also argue that the Corps failed to satisfy its NEPA obligations by incorporating by reference the FAA's analysis because "the FAA itself never analyzed or evaluated the impact of noise on the public health of residents." Plaintiffs' Motion at 15. In opposition, the Corps contends that its "reliance on FAA's use of its existing methodology was reasonable and is due considerable deference." Corps Motion at 13. The Corps argues that Plaintiffs essentially disagree with the methodology the FAA employed to analyze the effect of noise. Id. at 14. Broward County also asserts that it was appropriate for the Corps to incorporate the FAA's FEIS on noise-related impacts into its MFR/EA. Broward County Motion at 10.

Here, the administrative record establishes that noise impacts were considered in the FEIS. See AR 01235-513; 05302-35; 05609-764; 06038-39; 06055. Moreover, the administrative record reveals that the FAA received a comment regarding the adverse health effects of airport noise which urged the FAA to revise the EIS to analyze these concerns, but the FAA decided to apply its existing aviation noise methodology. AR 04874. The FEIS notes that "the Integrated Noise Model (INM) and the associated methodologies to assess aircraft noise impacts [ ] is the accepted industry methodology for assessing noise impacts on the human environment." Id. This Court cannot find that the FAA was unreasonable in relying on its established methodology regarding noise impacts. See City of Bridgeton v. FAA, 212 F.3d 448, 459 (8th Cir. 2000) (declining to "second-guess the FAA's noise level findings" because "[t]he agency, not a reviewing court, is entrusted with the responsibility of considering the various modes of scientific evaluation and theory and choosing the one appropriate for the given

15

circumstances.") (citations and internal quotation marks omitted).  Accordingly, it was

not arbitrary and capricious for the Corps to rely upon the FEIS' discussion of the noise

impacts of the runway expansion.[9]

The Eleventh Circuit's holding in Sierra Club v. United States Army Corps of

Engineers supports this result.  In Sierra Club, the Court held that the Corps had met its

requirements under NEPA because:

> First, it acted as a cooperating agency in the preparation of the 1994 EIS.
> Second, it remained involved in the planning process throughout the
> development of the mitigation plan and the other methods to avoid and minimize
> the impact of the Parkway. Third, the Corps acted both efficiently and
> consistently with NEPA regulations by incorporating the previous studies into its
> current analysis. The 1997 EAs all incorporate portions of the 1993 biological
> opinion and rely on the 1994 EIS, as well as the work done during the
> partnership process.  The initial 1997 EA, prepared January 6, 1997, extensively
> referred to and relied upon the 1994 EIS and the 1993 biological opinion. Indeed,
> the "reasonable and prudent measures" and "terms and conditions" detailed by
> FWS in the 1993 biological opinion were incorporated verbatim, with notations
> describing the changes being made to increase the mitigating effects.
> Subsequent EAs in 1997 referred back to this January 6, 1997 EA and the 1994
> EIS. Such reliance on a previous EIS is specifically authorized.

295 F.3d at 1220 (footnote omitted).  Similarly, here, the Corps was a cooperating

agency in the preparation of FEIS.  See, e.g., AR 00011-12; 00013-20; 00061; 05128.

Indeed, the Corps participated in the review process for the draft EIS.  AR 00286.  The

MFR/EA explicitly incorporates the FEIS by reference.  AR 21644.  The Corps also

---

[9]      Indeed, under the Vision 100 Act, the Corps was required to defer to the
FAA on matters of aviation expertise.  See 49 U.S.C. § 47171(h).  Accordingly, it was
reasonable for the Corps to refer the Plaintiffs' concerns regarding noise impacts and
the WHO Report to the FAA.  See Corps Motion at 15 (citing AR 21331-33).  Moreover,
as Broward County points out, Plaintiffs never challenged the FAA's noise methodology
with the FAA, even when they filed a lawsuit regarding the expansion project against
the FAA.  See Broward County Motion at 8.  Instead, Plaintiffs indirectly challenge the
FAA's methodology by contesting the Corps' issuance of the permit.  See id.

forwarded comments it received regarding noise impacts to the FAA which the FAA in turn addressed.  See AR 21702 ("The applicant provided a summary of the chapters where these public comments were previously addressed in the FEIS on 20 June 2011. The applicant provided RAI responses on 14 June 2011. The applicant provided a Written Re-evaluation of the FFEIS (WR-FFEIS) and a response to the letter from White and Case on behalf of the City of Dania Beach on 26 August 2011."); 21330; 21331-33 (FAA's Review of and Responses to the letters received by the USACE from White and Case on Behalf of the City of Dania Beach, FL, dated March 29 and April 14, 2011).  This record establishes that the Corps fulfilled its NEPA obligations.

Plaintiffs also argue that the Corps violated NEPA because they failed to analyze or evaluate the impacts of increased noise from airplanes using the South Runway. Plaintiffs' Motion at 14.  This argument ignores the fact that the Corps specifically incorporated by reference the FEIS, the ROD, the Written-Revaluation, and written correspondence with the FAA regarding noise studies Plaintiffs submitted.  See AR 21664.  As discussed above, the Court finds that the FAA adequately considered the impact of noise from the runway expansion project using its standard methodology.  It was appropriate for the Corps, deferring to the aviation expertise of the FAA, to incorporate this analysis into its MFR/EA.

### c. Noise Mitigation Measures Nullified the Need for Further Environmental Review of Noise Impacts.

Both Broward County and the Corps argue that the noise mitigation measures incorporated into the ROD and Written Re-Evaluation alleviated the need for any further review of noise impacts.  Corps Motion at 16-17; Broward County Motion at 8-9.  In

opposition, Plaintiffs contend that this argument is without merit because (1) the Corps did not impose any noise mitigation conditions on its permit; (2) neither the Corps nor the FAA determined that noise mitigation measures would prevent increased cardiovascular disease and cognitive impairment in children; and (3) the noise mitigation measures would not avoid all the public health risks described in the WHO Report.  Plaintiffs' Consolidated Memorandum of Law in Opposition to Defendant U.S. Army Corps of Engineers' Cross-Motion for Summary Judgment (D.E. 59) and Intervenor Defendant Broward County's Cross-Motion for Summary Judgment (D.E. 57) and in Support of Plaintiffs' Motion for Summary Judgment (D.E. 53) [DE 66] ("Plaintiffs' Reply") at 18-21.

Under Eleventh Circuit precedent, "[w]hen mitigation measures compensate for otherwise adverse environmental impacts, the threshold level of 'significant impacts' is not reached so no EIS is required."  C.A.R.E. Now, Inc. v. FAA, 844 F.2d 1569, 1575 (11th Cir. 1988).  The mitigation measures, however, must be "a condition of agency approval."  Sierra Club, 295 F.3d at 1220.  Here, Plaintiffs argue that the Corps cannot rely on any mitigation measures discussed in the FEIS, ROD, and Written-Reevaluation because the Corps did not impose any noise mitigation conditions in its permit.  Plaintiffs' Reply at 18.  However, as the Corps points out, it "incorporated the FAA's analysis and decision, and so necessarily incorporated the portion of the FEIS that discusses noise mitigation and indeed imposes mitigation measures as conditions precedent to the project's approval."  Corps Reply at 7.  A review of the Administrative Record indicates that the FEIS incorporates eight operational noise abatement and mitigation measures and four land-use based mitigation measures.  AR 05334-35.

18

Approval of the ROD is explicitly conditioned upon implementation of these mitigation measures.  AR 06334.  Thus, it was reasonable for the Corps to rely upon the FAA's mandatory mitigation measures and no further environmental review was necessary.  See Hillsdale Envtl. Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs, 702 F.3d 1156, 1172-73 (10th Cir. 2012) (holding that Corps reasonably relied on mitigation agreement entered by BNSF Railway Company and Kansas Department of Health and the Environment to find no significant impact from dust emissions and that Corps preparation of EIS was not necessary).  To the extent Plaintiffs argue that the noise mitigation plan will not avoid all the public health risks identified in the WHO Report, see Plaintiffs' Reply at 19-20, the Court finds that this is merely another attack on the FAA's chosen noise impact methodology, which the Court has extensively discussed–and rejected–above.[10]

### 2. The Corps was not Required to Prepare a SEIS.

Plaintiffs also argue that the Corps violated NEPA by failing to prepare a SEIS after it was provided the WHO Report.  Plaintiffs' Motion at 20.  Plaintiffs contend that the WHO Report was "a new authoritative analysis of the public health impacts of noise."  Id.  Defendants both argue that no SEIS was necessary because the WHO Report did not present new information.  Broward County Motion at 12; Corps Motion at 17.  The Court agrees that the Corps' decision not to prepare a SEIS was neither

---

[10]     Moreover, as Broward County points out in its reply, the WHO Report acknowledges that "[n]oise annoyance is widely accepted as an end-point of environmental noise on the exposed population."  Broward County Reply at 2 (citing AR 17684).

arbitrary nor capricious.

A SEIS should only be prepared when new circumstances "present a *seriously* different picture of the environmental impact of the proposed project from what was previously envisioned."  Fla. Keys Citizens Coal., Inc., 374 F. Supp. 2d at 1145 (citations and internal quotation marks omitted) (emphasis in original).  Here, Plaintiffs concede that they had previously submitted many of the individual studies discussed in the WHO Report to the FAA.  See Plaintiffs' Motion at 21; AR 17464 ("These concerns are not newly discovered.  We raised these concerns as early as January 2009 when we submitted a letter to the Federal Aviation Administration.")  Indeed, the FEIS reflects that the FAA received a comment regarding the adverse health effects of airport noise from Plaintiffs, but decided to apply its existing aviation noise methodology.  AR 04874. When the Plaintiffs brought the WHO Report to the Corps' attention, the Corps in turn provided it to the FAA who concluded that its existing methodology was sufficient.  AR 21333.  Thus, Plaintiffs have failed to demonstrate that the WHO Report constitutes "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts" sufficient to require a SEIS.  See 40 C.F.R. § 1502.9(c)(1); Airport Cmtys. Coalition v. Graves, 280 F. Supp. 2d 1207, 1218-19 (W.D. Wash. 2003) (SEIS not necessary where the Corps considered "environmental impacts and found them to be insignificant in light of various mitigation measures that would be put in place.").  Because Plaintiffs have failed to establish that the Corps was arbitrary and capricious in carrying out its obligations under NEPA, the Court will grant summary judgment for Defendants on Plaintiffs' NEPA claim.

## C. The Corps did not Violate the CWA.

The parties also cross move for summary judgment on Plaintiffs' CWA claim.

Plaintiffs contend that the Corps violated the CWA by (1) failing to consider the

potential for the project to affect public health and (2) affording the opportunity for

adequate public participation because neither of its notices "provided any information

as to likely secondary and cumulative health effects resulting from the proposed

activity."  Plaintiffs' Motion at 22-24.  Broward County argues that the Corps properly

relied on the FAA's expertise regarding aviation noise impacts.  Broward County Motion

at 14.  Similarly, the Corps argues that it considered multiple factors beyond the harm

to wetlands in its environmental assessment, including conservation, economics,

aesthetics, general environmental concerns, historic properties, fish and wildlife values,

flood hazards, floodplain values, land use, navigation, water quality, safety, and the

need and welfare of the people.  Corps Motion at 20 (citing AR 21714).  The Corps also

contends that it complied with all public notice requirements and that there is no

evidence that the Corps hid any information from the public.  Id. at 22-27.

First, the Court agrees with Defendants that the Corps adequately considered all

potential impacts related to the runway expansion project.  Corps regulations state that:

> The decision whether to issue a permit will be based on an evaluation of the
> probable impacts, including cumulative impacts, of the proposed activity and its
> intended use on the public interest. Evaluation of the probable impact which the
> proposed activity may have on the public interest requires a careful weighing of
> all those factors which become relevant in each particular case. The benefits
> which reasonably may be expected to accrue from the proposal must be
> balanced against its reasonably foreseeable detriments. The decision whether to
> authorize a proposal, and if so, the conditions under which it will be allowed to
> occur, are therefore determined by the outcome of this general balancing

process. That decision should reflect the national concern for both protection and utilization of important resources. All factors which may be relevant to the proposal must be considered including the cumulative effects thereof: among those are conservation, economics, aesthetics, general environmental concerns, wetlands, historic properties, fish and wildlife values, flood hazards, floodplain values, land use, navigation, shore erosion and accretion, recreation, water supply and conservation, water quality, energy needs, safety, food and fiber production, mineral needs, considerations of property ownership and, in general, the needs and welfare of the people.

33 C.F.R. § 320.4(a)(1).  Moreover, the Corps may determine the specific weight to be given each factor.  33 C.F.R. § 320.4(a)(3).  Here, the administrative record establishes that the Corps considered many potential impacts of the runway expansion project.  AR 21714.  Plaintiffs' argument that the Corps did not adequately consider the public interest because it failed to consider the runways's impact on public health is merely a variation of the argument that the Corps did not consider the WHO Report.  See Plaintiffs' Motion at 22 .  However, as discussed extensively above, the Corps properly deferred to the FAA on matters of aviation expertise, including noise impacts. Moreover, the Corps incorporated the FAA's noise impact analysis, and all noise mitigation measures, into its MFR/EA.  AR 21664.  Accordingly, based on this record, the Corps was not arbitrary and capricious in determining that the permit was in the public interest.

The record similarly does not support that the Corps violated the CWA's public participation requirements.  See Plaintiffs' Motion at 23 (citing 33 U.S.C. § 1344(a); 33 C.F.R. §§ 325.2(a), 325.3).  Under Corps' regulations,"[t]he notice must

[ ] include sufficient information to give a clear understanding of the nature and magnitude of the activity to generate meaningful comment."  33 C.F.R. § 325.3(a).

Here, the notices the Corps issued unequivocally did this, clearly describing the project purpose and the nature of the work to be done through issuance of the permit.  See AR 13366 ("The basic project purpose is to provide sufficient capacity for existing and forecast demand at Fort Lauderdale-Hollywood International Airport (FLL). . . . The applicant proposes to fill approximately 15.51 acres, and potentially secondarily impact 3.32 acres of freshwater and saltwater wetlands for the redevelopment and extension of Runway 9R/27L at the Fort Lauderdale-Hollywood International Airport."); 19488. Corps' regulations specifically contemplate that "[i]f a question develops with respect to an activity for which another agency has responsibility and that other agency has not responded to the public notice, the district engineer may request its comments."  33 C.F.R. § 325.3(d).  This is exactly what occurred here: when the Corps received the Plaintiffs' comments regarding the health effects of aviation noise, the Corps provided the comments to the FAA for response.  AR 17464-845; 21330.  There is no evidence, other than Plaintiffs' bare assertion that the August 2011 letter the Corps received from the FAA, AR 21331-34, was "[t]he Corps' main justification in the ROD for refusing to consider the public health impacts from increased noise."  Plaintiffs' Motion at 24.[11]

---

[11]     Even if the Corps did rely on the August 2011 letter when issuing the permit, this does not establish that the Corps violated the notice requirements.  The rationale of the August 2011 letter is the same as discussed in the FEIS which the Corps incorporated into its MFR/EA and referenced in the notices.  See Corps Reply at 10.  Thus, the information contained in this letter would not represent "essential data and the agency's rationale."  Nat'l Wildlife Fed'n v. Marsh, 568 F. Supp. 985, 994 (D.D.C. 1983).  The Corps' rationale for rejecting Plaintiffs' comment was contained within the administrative record long before the August 2011 letter.  See id. (finding that notice requirement was not met where evaluation which formed the basis for Secretary's decision was first introduced after public comment period concluded).

Instead, the Corps properly followed the procedure outlined in 33 C.F.R. § 325.3(d) to seek the FAA's comment.

Plaintiffs have failed to cite any authority for the proposition that the Corps was required to modify the notice to raise previous public comments such as the Plaintiffs' concerns regarding health impacts from aviation noise.  See Broward County Reply at 9.[12]  Moreover, there is no evidence that the Corps in any way concealed information regarding the health effects of aviation noise from the public.  See Plaintiffs' Motion at 24.  Instead, both public notices provide a link to the FEIS which throughly analyzes noise impacts.  AR 13372; 19494.  Thus, the Court cannot find that the Corps was arbitrary and capricious in carrying out its obligations under the CWA.  Accordingly, the Court will grant summary judgment for Defendants on Plaintiffs' CWA claim.

## III. CONCLUSION

Based on a thorough review of the administrative record and the foregoing analysis, the Court finds that Defendants are entitled to summary judgment. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      Plaintiffs' Motion for Summary Judgment [DE 53] is **DENIED**;

2.      Intervenor Defendant Broward County's Cross-Motion for Summary Judgment

---

[12]      Essentially, Plaintiffs ask this Court to find that the Corps violated the CWA because it did not apprise the public of comments Plaintiffs raised regarding the health effects of airport noise.  There is simply no evidence that the Corps failed to provide "sufficient information to give a clear understanding of the nature and magnitude of the activity to generate meaningful comment," as required by 33 C.F.R. § 325.3(a) when Plaintiffs and many others did in fact comment.  See Broward County Reply at 10 (citing AR 15872-73; 15878; 15893-94; 16834; 17430; 17467).

[DE 57] is **GRANTED**;

3.      Defendant U.S. Army Corps of Engineers' Cross-Motion for Summary Judgment

      [DE 59] is **GRANTED**; and

4.      The Court will enter a separate final judgment.

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 22nd day of July, 2013.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.